## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

GREGORY BARNES, #B88957,      )
                                   )
          **Plaintiff,**        )
                                   )
vs.                         )         Case No. 19−cv–00806−SMY
                                   )
FRANK LAWRENCE,           )
KRISTA ALLSUP,             )
ANDREW SPILLER, and      )
PATTY SNEED,              )
                                   )
          **Defendants.**     )

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Gregory Barnes, a transgender individual and inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was in custody at Menard Correctional Center ("Menard"). Plaintiff claims he was denied the right marry and was retaliated and discriminated against by Menard employees. He requests money damages and injunctive relief.

Plaintiff's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

1

**The Complaint**

Plaintiff makes the following allegations in the Complaint (Doc. 1): In December 2018, Plaintiff and his fiancée, Christian, who was also incarcerated at Menard, submitted seventeen written requests for an interview with the chaplain in order to start the process of getting married. Their requests were ignored and so they filed multiple grievances that also went unprocessed. *Id.* at pp. 6, 7. Plaintiff asked Warden Frank Lawrence if there was anything he could do or if Warden Lawrence could provide Plaintiff with information regarding the marriage process for inmates. *Id.* at p. 6. Warden Lawrence informed Plaintiff that no such event would happen at Menard and that Plaintiff should not bring the subject up again. *Id.* at p. 7. Plaintiff claims that Case Worker Supervisor Krista Allsup said to consider "my request like a disease, and to keep it to myself until I get out of prison." *Id.*

In March 2019, Plaintiff and Christian were taken to see Lieutenant Andrew Spiller, who threatened to separate them and place them in segregation if they did not change their minds about wanting to marry. *Id.* Following the meeting, Plaintiff and Christian were attacked in the barber shop and were then separated and placed in segregation. When they were released from segregation, they were no longer celled together. *Id.* at p. 8. Christian was transferred from Menard to Pontiac Correctional Center in June 2019.

Based on the allegations in the Complaint, the Court designates the following five Counts:

**Count 1:** Fourteenth Amendment right to marry claim against Lawrence, Allsup, Spiller, and Sneed for denying Plaintiff the right to marry.

**Count 2:** First Amendment claim of retaliation against Lawrence, Allsup, Spiller, and Sneed for not processing Plaintiff's grievances, orchestrating the attack in the barber shop, harassing and threatening Plaintiff, placing Plaintiff in segregation, and transferring Christian to another facility in retaliation for

excising the right to marry and filing grievances.[1]

> **Count 3:** Eighth Amendment claim against Lawrence, Allsup, Spiller, and Sneed for orchestrating an attack against Plaintiff in the barber shop.
>
> **Count 4:** Fourteenth Amendment equal protection claim against Lawrence, Allsup, Spiller, and Sneed for discriminating against Plaintiff for being black and transgender.
>
> **Count 5:** Fourteenth Amendment due process claim against Lawrence, Allsup, Spiller, and Sneed for the mishandling of Plaintiff's grievances.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

### Preliminary Dismissal

As an initial matter, the Court dismisses all claims against Patty Sneed. Plaintiff alleges that Sneed, a member of the Administrative Review Board, was made aware that the other defendants were violating his constitutional rights and ignored his grievance without "any further consideration, investigation, or resolution." (Doc. 1, p.10). Inmates do not have a constitutional right to an effective grievance procedure. *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). As such, the fact that prison officials denied, mishandled, or refused to consider grievances or claims raised by grievances, "who otherwise did not cause or participate in the underlying conduct[,] states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Some personal

---

[1] Plaintiff also claims that he was retaliated and discriminated against because he is transgender. (Doc. 1, p. 10). Plaintiff's claims regarding unconstitutional treatment because he is transgender will be analyzed under the Fourteenth Amendment in Count 4.

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

involvement beyond the grievance process is necessary.  *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016).  Plaintiff does not provide any facts in his statement of claim that suggest Sneed had personal involvement in the alleged constitutional violations aside from processing and/or denying his grievances.  Accordingly, any claims against her will be dismissed without prejudice.

## Discussion

### Count 1

In *Turner v. Safley,* 482 U.S. 78 (1987), the Supreme Court recognized the fundamental right of prisoners to marry – a right that may be limited only for sound penological reasons.  *Id.* at 94–100.  The Supreme Court has also found that the fundamental right to marry extends to same-sex couples.  *Obergefell v. Hodges,* 135 S. Ct. 2584, 2599 (2015).

Plaintiff claims Defendants denied him the right to marry another inmate.  Whether Defendants' refusal "is reasonably related to legitimate penological interests" is unclear at this point.  *Riker v. Lemmon,* 798 F.3d 546, 551 (7th Cir. 2015).  Therefore, Count 1 will proceed against Lawrence, Spiller, and Allsup.

### Count 2

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement.  *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012).  To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation."  *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Plaintiff claims Defendants retaliated against him for exercising his right to marry and to file grievances by improperly handling his grievances and marriage requests. He also alleges that Spiller harassed and threatened him, orchestrated an attack against him, and transferred Christian (his fiancée) to another facility. While some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation of the exercise of a constitutionally protected right, they are actionable under § 1983. *See*, *Bridges v. Gilbert,* 557 F.3d 541, 552 (7th Cir. 2009). Accordingly, Count 2 survives screening.

**Count 3**

"The Eighth Amendment protects against 'calculated harassment unrelated to prison needs.'" *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)). Plaintiff's alleges that Spiller threatened him and stated that he would be "segregated, separated, and dealt with" if he did not change his mind about wanting to marry. (Doc. 1, p. 7). He also alleges that following these threats, he was attacked at the barber shop, placed in segregation, and subsequently celled in a different cell than Christian. These allegations are sufficient to state a claim.

However, Plaintiff's claims of cruel and unusual punishment against Lawrence and Allsup will be dismissed. Plaintiff does not include enough facts so that his claim crosses "the line between possibility and plausibility." *Twombly,* 550 U.S. at 557. Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters,* 631 F.3d 418, 419 (7th Cir. 2011), "naked assertions devoid of further factual enhancement" are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Additionally, "[l]iability under § 1983 is direct rather than vicarious; supervisors are responsible for their own

5

acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper,* 910 F.3d 1027, 1029 (7th Cir. 2018).

Plaintiff also claims that Lawrence deferred to Spiller and allowed Spiller to threaten and mistreat him and that "Spiller and defendants" directed the attack and his placement into segregation. (Doc. 1, pp. 8, 10). But he does not include facts suggesting that Lawrence or Allsup were personally involved in the attack or subsequent segregation placement. Therefore, Count 3 will be dismissed against them.

### Count 4

The Equal Protection Clause of the Fourteenth Amendment protects against governmental discrimination on the basis of race, gender, national origin, or religion. It also prohibits a government official from singling out a person for different treatment for no rational reason. "To state a class-of-one equal protection claim, an individual must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Swanson v. City of Chetek*, 719 F.3d 780, 783-84 (7th Cir. 2013) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

Here, Plaintiff claims Spiller harassed him for being transgender, black, and in love with Christian. Spiller's alleged statements that at Menard "there is no place for such faggot games" and that Plaintiff would "never see Christian again until they met in hell" suggest he may have denied Plaintiff's request to marry because Plaintiff is transgender. (Doc. 1, p. 9). Likewise, based on statements allegedly made, it is plausible that Lawrence and Allsup's refusal to address Plaintiff's grievances and requests were due to prejudice against transgender individuals. At this stage Plaintiff has sufficiently pled an equal protection claim, and Count 4 will proceed for further consideration.

**Count 5**

As previously noted, prison grievance procedures do not give rise to a liberty interest protected by the Due Process Clause. Therefore, Plaintiff's claims that Defendants violated his constitutional rights by ignoring, destroying, and never processing his grievances will be dismissed.

**<u>Request for Injunctive Relief</u>**

In addition to money damages, Plaintiff requests injunctive relief prohibiting Defendants at Menard from continuing the retaliatory separation of he and Christian and denying their requests to marry. (Doc. 1, p. 11). However, Plaintiff has notified the Court that he is now incarcerated at Pontiac Correctional Center. (Doc. 8). "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred," and these allegations of retransfer "may not be based on mere speculation." *Higgason v. Farley,* 83 F.3d 807, 811 (7th Cir. 1996). Accordingly, Plaintiff's request for injunctive relief is **DENIED as MOOT**.

**<u>Motion to Appoint Counsel</u>**

Plaintiff has also filed a Motion for Recruitment of Counsel (Doc. 6). There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene,* 615 F.3d 847, 851 (7th Cir. 2010). Federal District Courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff discloses that he has mailed letters to four law firms in an attempt to obtain counsel and states that he has not received any responses. Providing a list of law firms, however, with no additional information or documentation, such as copies of the letters sent, is not sufficient to demonstrate that Plaintiff has made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Plaintiff indicates that he is unable to represent himself because of the complexity of the issues. Nonetheless, the Court finds that Plaintiff can proceed *pro se*, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. The claims in this case are straightforward, and Plaintiff appears competent to litigate this matter without representation at this time. For these reasons, Plaintiff's motion is **DENIED without prejudice**; Plaintiff may renew his request for appointment of counsel at a later date if necessary. Should Plaintiff renew his request, he should include rejection letters from at least three lawyers to prove that he has recently made reasonable efforts to find a lawyer on his own.

## Disposition

**IT IS HEREBY ORDERED** that the Motion for Recruitment of Counsel (Doc. 6) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that **COUNT 1** shall proceed against **Lawrence, Allsup,** and **Spiller,** but is **DISMISSED** without prejudice as to **Sneed.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall proceed against **Lawrence, Allsup,** and **Spiller,** but is **DISMISSED** without prejudice as to **Sneed.**

**IT IS FURTHER ORDERED** that **COUNT 3** shall proceed against **Spiller,** but is **DISMISSED** without prejudice as to **Lawrence, Allsup,** and **Sneed.**

**IT IS FURTHER ORDERED** that **COUNT 4** shall proceed against **Lawrence, Allsup,** and **Spiller,** but is **DISMISSED** without prejudice as to **Sneed.**

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** with prejudice**.**

Because there are no surviving claims against **Sneed**, the Clerk of Court is **DIRECTED** to terminate her in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** the Clerk of Court shall prepare for **Lawrence, Allsup,** and **Spiller**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

This entire matter shall be **REFERRED** to a United States Magistrate Judge for

disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS ALSO ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 11/18/2019**

                                    *s/Staci M. Yandle*
                                **STACI M. YANDLE**
                                **United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**